UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

PAUL K. KELLNER, JR.,

        Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____

**DECISION AND ORDER**
17-CV-947S

1.     Plaintiff Paul K. Kellner, Jr. brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his application for supplemental security income ("SSI") under Title XVI of the Act. (Docket No. 1). The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

2.     Plaintiff protectively filed an application for SSI with the Social Security Administration ("SSA") on June 7, 2013. (R.[1] at 16, 199-203). Plaintiff alleged disability since October 22, 2010 due to mental health issues, disc damage in lumbar spine, kidney and bladder problems, and Barrettes esophagus. (R. at 21, 230). Plaintiff's applications were denied (R. at 135-47), and Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ") (R. at 16).

3.     On July 20, 2015, ALJ Sharon Seeley held a hearing at which Plaintiff—represented by counsel—appeared and testified. (R. at 82-133). Vocational Expert ("VE") Josiah Pearson also appeared and testified via telephone. Id. At the time of the hearing, Plaintiff was 48 years old (R. at 134, 199), with a 10th grade education and a

---

[1] Citations to the underlying administrative record are designated as "R."

general equivalency degree. (R. at 92, 231). Plaintiff has past work experience as a mold maker and a stock clerk. (R. at 120, 232).

4. The ALJ considered the case *de novo* and, on February 12, 2016, issued a written decision denying Plaintiff's application for benefits. (R. at 16-26). On May 11, 2017, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 5-8). Plaintiff filed the current action, challenging the Commissioner's final decision,[2] on September 22, 2017. (Docket No. 1).

5. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 13, 20). Plaintiff filed a response on October 26, 2018 (Docket No. 21), at which time this Court took the matter under advisement without oral argument. For the reasons that follow, Plaintiff's motion is granted, and Defendant's motion is denied.

6. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than

---

[2] The ALJ's February 12, 2016 decision became the final decision of the Commissioner of Social Security on this matter when the Appeals Council denied Plaintiff's request for review.

one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42 (1987).

9. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based

> solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460 (1983).

11. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since June 7, 2013. (R. at 18). At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine; benign prostate hypertrophy with outflow obstruction; left carpal tunnel syndrome; right ulnar neuropathy now status-post surgical release; and history of transient ischemic attack. Id.

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 20).

12. Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a less than full range of sedentary work with certain exceptions:

> [Plaintiff] can: lift, carry, push and pull ten pounds occasionally and light items such as folders or small tools frequently; sit six hours in an eight-hour workday, alternating after one hour to standing five minutes; stand and/or walk two hours in an eight-hour workday, alternating after thirty minutes to sitting five minutes; occasionally stoop, kneel, crouch or crawl; occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds; frequently handle and finger with his bilateral upper extremities; perform work that does not require repetitive bending at the waist or lower back and does not involve concentrated exposure to smoke, dust, fumes or other pulmonary irritants.

Id.

13. At step four, the ALJ found Plaintiff is unable to perform any past relevant work. (R. at 25). At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Id. Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 26).

14. Plaintiff argues the Commissioner's denial of benefits is not supported by substantial evidence because the Appeals Council failed to properly consider additional evidence. (Docket No. 13 at 22-36). For the reasons that follow, this Court agrees.

15. On April 13, 2016, Plaintiff requested review of the ALJ's February 12, 2016 decision and submitted additional evidence to the Appeals Council. (R. at 11, 32-62). Plaintiff contends the Appeals Council erred in denying review of the ALJ's decision because it "failed to properly evaluate new and material evidence" and "fail[ed] to give

5

good reasons to reject the favorable opinion of [Plaintiff's] treating neurosurgeon." (Docket No. 13 at 22, 30).

16. The Appeals Council is required to review a denial of benefits if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 416.1470(a)(5).

17. As a threshold matter, Defendant does not contest that the additional evidence is new and chronologically relevant. At issue is whether this additional evidence is probative, "meaning it provides a reasonable probability that the new evidence would have influenced the Commissioner to decide the claimant's application differently." McIntire v. Astrue, 809 F. Supp. 2d 13, 21 (D. Conn. 2010); see also Webb v. Apfel, 2000 U.S. Dist. LEXIS 13116, *40, 2000 WL 1269733 (W.D.N.Y. Feb. 8, 2000).

18. The record before the ALJ included 550 pages of medical records, which the ALJ considered and discussed. (R. at 18-25). Plaintiff has a documented history of low back and leg pain and presented diagnostic evidence of "severe degenerative disc disease at L5-S1 with disc space collapse, retrolisthesis and secondary foraminal stenosis." (R. at 21). Neurosurgeon P. Jeffrey Lewis, M.D. recommended an anterior approach discectomy and fusion at L5-S1 in March 2013, however, surgery was postponed due to more immediate medical problems. Id.

19. The ALJ noted that on August 6, 2014, Dr. Lewis's found "moderate to severe lumbar range of motion deficits, but negative straight leg raises, and normal sensory, motor and reflex examinations of the lower extremities." Id. On February 16, 2015, "[Plaintiff] underwent a total lumbar discectomy and decompression with fusion at

L5-S1." Id. The ALJ considered this procedure, as well as records of Plaintiff's post-surgical follow-up appointments with Dr. Lewis. Id.

20. The ALJ noted that "[b]y March 2015, [Plaintiff] reported improvement in his symptoms and stated that he was doing more around the house now." Id. The ALJ also pointed out that "[b]y June 2015, Plaintiff] was no longer using a cane and his biggest complaint was left knee pain after sitting too long" and "[Plaintiff] was pleased with his surgical outcome." Id. Indeed, on June 9, 2015, Dr. Lewis noted "[Plaintiff] is quite happy with the outcomes of his surgery." (R. at 650). This June 2015 office note was the most recent report of Dr. Lewis's opinion in the record before the ALJ.

21. Based on "careful consideration of the entire record," at step two, the ALJ determined that Plaintiff's degenerative disc disease of the lumbar spine is a severe impairment. (R. at 18-20). At step three, the ALJ noted she had "given particular consideration to listings 1.04 and 11.04," but found that "[t]he medical evidence does not document listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination." (R. at 20). The ALJ then determined Plaintiff retained the RFC to "perform less than a full range of sedentary work" with certain exceptions. Id.

22. Listing 1.04 is met when a claimant has one or more disorders of the spine, resulting in compromise of a nerve root or the spinal cord with:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or

> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, App'x 1, § 1.04

23. Subsequent to the ALJ's decision, Plaintiff submitted additional evidence to the Appeals Council, including medical records that post-dated those available to the ALJ. (R. at 32-62). The Appeals Council acknowledged this submission, "[Plaintiff] submitted four pages of evidence from WNY Urology Associates from April 28, 2014, seven pages of evidence from Dr. Fayyaz from December 12, 2014 to June 16, 2015, and 23 pages of evidence from Dr. Lewis from August 11, 2015 to January 22, 2016." (R. at 6). However, the Appeals Council found "this evidence does not show a reasonable probability that it would change the outcome of the decision." Id. Accordingly, The Appeals Council "did not consider and exhibit this evidence." Id.

24. Plaintiff argues the Appeals Council erred in its evaluation and asserts "there is a reasonable probability that the new evidence would change the ALJ's decision." (Docket No. 13 at 26). This Court agrees.

25. The ALJ's decision was informed by Dr. Lewis's treatment notes and physical examinations of Plaintiff through June 9, 2015. (R. at 628-51). These records, in isolation, substantially support the ALJ's determination that Plaintiff's spinal surgery

had been successful. (R. at 21). However, this inference is called into question by the additional evidence submitted to the Appeals Council, particularly by Dr. Lewis' records of Plaintiff's subsequent treatment.

26. On August 11, 2015, Plaintiff's chief complaints were of buttock, knee, and leg pain and Dr. Lewis noted that "[Plaintiff's] overall back pain is definitely better since the surgery." (R. at 33-34). However, on September 3, 2015, Dr. Lewis noted "[Plaintiff] initially was doing well for several months but he has had a release [sic]" accompanied by "increasing back and leg pain." (R. at 42). In addition, CT scans of Plaintiff's spine dated August 18, 2015 and August 28, 2015 (R. at 35-41)—included among the additional evidence submitted to the Appeals Council, but not available to the ALJ—caused "concern[ ] about the fusion," which "does not look robust through the L5-S1 space." (R. at 43).

27. Plaintiff had another MRI of the lumbar spine on October 13, 2015, and another follow-up with Dr. Lewis's office on December 2, 2015. (R. at 44-48). The office notes from this appointment indicate "[Plaintiff] continues to have ongoing back pain, greater on the left side, aggravated by walking" and "[h]is pain seems to be worsening." (R. at 47). Another lumbar spine CT scan was ordered, which was performed on December 21, 2015. (R. at 49-50).

28. On January 22, 2016, Dr. Lewis reviewed the most recent CT scans and performed a physical examination. (R. at 51). Dr. Lewis noted the "CT scan shows a solid well[-]healed fusion at L5-S1," but also shows "foraminal stenosis at L5-S1 bilaterally." Id. Dr. Lewis opined that "[Plaintiff's] pain is coming from the foraminal

stenosis at L5-S1" and recommended a left L5-S1 foraminotomy, "a decompressive procedure." (R. at 52). Dr. Lewis also detailed his physical examination findings:

> [Plaintiff's] activities of daily living are limited by persistent pain radiating from his back through his left lower extremity. He shows evidence physically of nerve root compression. He has positive straight leg raising, an antalgic gait, hypoactive left ankle reflex and weakness of left ankle plantar flexion. His imaging studies including CT and MRI scans, show foraminal stenosis supported by the radiology report. He has failed well over three months of conservative treatment. It is 11 months since his surgery was done. He is disabled from work, is on activity modifications.

Id.

29. Defendant admits that "Plaintiff continued to report back and leg pain resulting from nerve-root compression" and that "Dr. Lewis recommended a second lumbar procedure to relieve this compression." (Docket No. 20 at 13-14). Nevertheless, Defendant maintains "[t]he Appeals Council was correct; there was no reasonable probability that the new evidence would change the outcome of the ALJ's decision." Id.

30. According to Defendant, "[a]t most, the new evidence shows that Plaintiff continued to experience some degree of back and leg pain after his lumbar fusion" and "[t]he fact that Plaintiff ultimately required a second lumbar procedure is not in tension with the ALJ's finding that Plaintiff was limited to a reduced range of sedentary work." Id. This argument is unavailing.

31. On the basis of the record before her, the ALJ determined that the criteria for Listing 1.04 was not met because "*no acceptable medical source has mentioned findings equivalent in severity.*" (R. at 20) (emphasis supplied).

32. Listing 1.04(A) is met when a claimant shows:

10

> Evidence of nerve root compression characterized by neuro-
> anatomic distribution of pain, limitation of motion of the
> spine, motor loss (atrophy with associated muscle weakness
> or muscle weakness) accompanied by sensory or reflex loss
> and, if there is involvement of the lower back, positive
> straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App'x 1, §1.04(A).

33. The ALJ incorporated limitation of motion of the spine into the RFC, finding Plaintiff is limited to "work that does not require repetitive bending at the waist or lower back." (R. at 20). However, the ALJ also noted that the Plaintiff's physical examination showed "negative straight leg raises, and normal sensory, motor and reflex examinations of the lower extremities." (R. at 21).

34. Dr. Lewis's findings were significantly different on January 22, 2016, but the ALJ did not have the opportunity to consider that record. Less than a year after Plaintiff's surgery, physical examination showed nerve root compression associated with leg and back pain, weakness of ankle plantar flexion, hypoactive ankle reflex, and positive straight leg raising. (R. at 51).

35. In this case, the ALJ's decision explicitly relied on the dearth of acceptable medical opinion evidence that the Listing criteria were met. (R. at 20). As Plaintiff's treating neurosurgeon, Dr. Lewis is certainly an acceptable medical source. Further, Dr. Lewis's later findings and opinions indicate Plaintiff's spinal impairment(s) may meet or medically equal the criteria of Listing 1.04(A).

36. Because the ALJ relied on the absence of such evidence in denying Plaintiff's application for benefits, this Court finds there is a reasonable probability this new evidence would change the outcome of the ALJ's decision.

37. For the foregoing reasons, this Court finds that the Appeals Council failed to properly consider new, material, and chronologically relevant evidence, and that the Commissioner's decision is not supported by substantial evidence. Therefore, remand is warranted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 13) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 20) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated: June 21, 2019
        Buffalo, New York

      /s/William M. Skretny
      WILLIAM M. SKRETNY
      United States District Judge